IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DANIEL LALOWSKI,**<br><br>                **Plaintiff,**<br><br>     v.<br><br>**CORINTHIAN SCHOOLS, INC. and**<br>**CORINTHIAN COLLEGES, INC.**<br>**(a.k.a. EVEREST COLLEGE),**<br><br>                **Defendants.** | **Case No. 10 C 1928**<br><br>**Hon. Harry D. Leinenweber** |

### MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment by Defendants Corinthian Schools, Inc. and Corinthian Colleges, Inc. (hereinafter, collectively, the "Defendants"). For the reasons stated herein, the Court grants summary judgment to Defendants as to Plaintiff's Title VII retaliation claim and Title IX claim for punitive damages, but denies summary judgment as to Plaintiff's Title IX retaliation claim.

### I. BACKGROUND

According to Plaintiff, he was a high-performing admissions and recruiting officer for Corinthian College's Everest College campus. At various times in 2008, he received complaints about inappropriate conduct by his supervisor, Stanley Lofton ("Lofton"). Two of those complaints involved students who alleged that Lofton had inappropriately hugged them, kissed their cheeks, asked for

their phone numbers, or all three. The third involved Lofton putting a coworker, Cynthia Thomas ("Thomas"), in a headlock and giving her a "noogie" (by rubbing his knuckles on her head). Plaintiff claims that Thomas was bothered by the conduct, but did not wish to report it lest she lose her job. Similarly, the allegedly harassed student to whom Plaintiff spoke chose not to press a formal complaint.

However, in late 2008, Campus President Jeffrey Jarmes ("Jarmes") told Plaintiff that Lofton was being investigated, at which point Plaintiff told Jarmes about the three incidents of misconduct. In December 2008, Plaintiff wrote to Michelle McCormack ("McCormack"), a human resources representative, offering to help with the investigation into Lofton. McCormack replied that the investigation was into "an issue" on the Chicago campus, not into Lofton, and cautioned Plaintiff not to discuss the issue without firsthand knowledge. Unbeknownst to Plaintiff at the time, Lofton sent an e-mail to Human Resources in December 2008, claiming that Plaintiff was sowing discord and that other employees were "sick of" him. Lofton sought guidance on how to fire Plaintiff.

According to Plaintiff, he told Jarmes in late 2008 that he wanted to take January 2, 2009, off, although he did not have enough vacation time. Plaintiff claims that Jarmes would give good employees the day off without charging their vacation time, and that Jarmes basically told him not to worry. Plaintiff did not attend work on January 2.

Plaintiff contends that another student came to him on or around January 5, 2009, complaining that Lofton behaved inappropriately toward her. Plaintiff brought the issue to Jarmes, who told him to direct the student to Jennifer Paugh ("Paugh"). Plaintiff claims that he escorted the student to Paugh's office and dropped her off, but does not know what became of the complaint after that.

On his January 6 timesheet, Plaintiff marked that he worked on January 2. When Lofton told him to correct the sheet, Plaintiff sought out Jarmes, who again told him not to worry about it. Jarmes then directed the person in charge of submitting timesheets to use whatever sick and vacation time Plaintiff had available to make up the day. According to his deposition, Jarmes did so to avoid holding up payroll, and on the theory that errors would be corrected in the next pay cycle. Lofton, however, independently contacted both the payroll person and McCormack, indicating that Plaintiff had falsified his timesheet. Based on Lofton's explanation, McCormack recommended Plaintiff's termination to Sean Quinn ("Quinn"), the Regional Vice President of Admissions. Plaintiff was fired on January 9, 2009. He claims that McCormack initially refused to give a reason, but eventually said that he was being fired for "insubordination."

Defendants tell a different story. According to them, Plaintiff suffered no ill consequences from reporting misconduct, and Lofton was counseled for his unprofessional behavior toward

Thomas. Interestingly, Defendants told the EEOC, but do not argue here, that Plaintiff had a history of making bad faith allegations against Lofton. (Based on McCormack's investigation report, the Court notes that she may have interviewed the wrong student in one of Plaintiff's complaints. If that is the case, it would not be surprising that the student denied being harassed.)

Defendants deny that Plaintiff was given January 2 off, and argue that he simply submitted a falsified timesheet. When he was told by Lofton to correct it, he instead took it to Jarmes. Jarmes told Plaintiff to obtain Lofton's approval and signature; Defendants appear to claim that Plaintiff submitted another uncorrected form instead. Jarmes told the payroll person to correct Plaintiff's timesheet with his sick and vacation hours. Jarmes and Lofton then both signed the timesheet with handwritten corrections, however, Lofton's signature is dated 1/9/2009. At Corinthian, timesheet falsification is a terminable offense, and Defendants claim that Plaintiff was fired accordingly. The Court notes, however, that Defendants' employees give such muddled accounts that it is difficult to discern Defendants' version of several key events.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable

fact finder to find for the non-moving party, and material if it may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts do not evaluate credibility or determine facts on summary judgment; they decide only whether there is enough evidence to send a case to trial. *Id.* at 249. If the movant meets its burden, the non-movant must present facts showing a genuine dispute to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

On summary judgment, the Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009). Because employment discrimination cases turn on issues of intent and credibility, they receive "special scrutiny" on summary judgment. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

Title VII prohibits discrimination against an employee for, *inter alia*, opposing discrimination and harassment on the basis of sex. 42 U.S.C. § 2000e-3(a); *Fine v. Ryan Intern. Airlines*, 305 F.3d 746, 751-52 (7th Cir. 2002). To prove retaliation under Title VII directly, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the two. *Fine,* 305 F.3d. at 752. Plaintiffs may prove a causal connection through direct evidence or "a convincing mosaic" of circumstantial evidence. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630-

31 (7th Cir. 2011). Plaintiffs may also prove retaliation through the indirect method set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *O'Leary,* 657 F.3d at 631.

Title IX prohibits sex discrimination by recipients of federal education funding, and retaliation against those complaining of such discrimination. *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173-74 (2005). Courts look to cases decided under Title VII to frame and inform their analyses under Title IX. *See Franklin v. Gwinnett Cnty. Pub. Schs.,* 503 U.S. 60, 74-75 (1992).

### III. <u>DISCUSSION</u>

#### A. Title VII Claim

Defendants claim that Plaintiff could not have been retaliated against in violation of Title VII. This is so, they argue, because only the Thomas incident involved an employee (a Title VII requisite), and Plaintiff admitted in deposition that he did not think the incident was sexual harassment. Because the behavior did not violate Title VII, Defendants argue, Plaintiff's reporting it to Jarmes was not protected conduct under Title VII. *See* 42 U.S.C. § 2000e-3. If Plaintiff did not engage in protected conduct, he cannot satisfy a necessary element of his retaliation claim. *See O'Leary,* 657 F.3d at 631.

Plaintiff argues that whether his report was protected conduct is a factual question. He argues that "[a] reasonable person in

[his] position would feel obligated, both morally and pursuant to defendants' policies, to report the conduct[.]" Pl.'s Mem. In Opp'n to Summ. J. 13. Citing *Fine* and *Firestine v. Parkview Health System, Inc.,* 388 F.3d 229 (7th Cir. 2004), Plaintiff argues that his conduct is protected if he had a reasonable, honest belief that the reported behavior constituted harassment; he need not have been correct. However, Plaintiff misses the critical limitation: under Title VII, plaintiffs must reasonably believe not only that harassment is occurring, but that harassment *prohibited by Title VII* is occurring. *See O'Leary,* 657 F.3d at 631; *Firestine,* 388 F.3d at 234; *Fine*, 305 F.3d at 752.

Placing Thomas in a headlock was unprofessional conduct, as Defendants acknowledge, and may well have violated Corinthian's general policy against harassment. However, that policy is not identical to the requirements of Title VII. Plaintiff could have felt (and evidently did, based on his deposition testimony) that he was bound by morals and office policies to report the conduct, *without* believing that the harassment violated Title VII. Plaintiff has offered no evidence that he either subjectively or reasonably believed that Thomas incident was sexual or sex-based harassment which violated Title VII; therefore, he was not protected from retaliation by that statute. *O'Leary,* 657 F.3d at 631-32. Accordingly, summary judgment on Plaintiff's Title VII claim is appropriate.

### B. Title IX Claim

#### *1. Punitive Damages*

Defendants ask this Court to find that punitive damages are unavailable under Title IX, citing *Barnes v. Gorman*, 536 U.S. 181 (2002) and cases interpreting it. In *Barnes*, the Court held that punitive damages are not available under Title VI, which it stressed had been interpreted consistently with Title IX. *Id*. at 187-88. That discussion has led several courts to find that punitive damages are unavailable under Title IX. *See, e.g., Doe 20 v. Bd. of Ed. of Cmty Unit Sch. Dist. No. 5*, 680 F.Supp.2d 957, 995, (C.D. Ill. 2010).

Plaintiff argues that this case is distinguishable from *Barnes* and its progeny, because this case is "virtually identical to a Title VII case[.]" Pl.'s Mem. In Opp'n to Sum. J. 15. Plaintiff argues that here, Title IX functions like Title VII, and thus that punitive damages should be available as they are under Title VII. Plaintiff cites no support for this proposition.

The Court agrees that in this case, Title IX operates similarly to Title VII. However, the Supreme Court has declined to rely on Title VII (with its express damages provision) for guidance on the scope of available damages under Title IX (which lacks one). *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 283-85 (1998). Furthermore, in *Barnes*, the Supreme Court based its discussion not on the statute's operation but the source of

- 8 -

Congress's authority to enact it — specifically, that Titles VI and IX were enacted under Congress's Spending Clause powers. *Barnes*, 536 U.S. at 187-88. The Court treated Title VI and Title IX obligations as essentially contractual, and accordingly found that punitive damages were not available under Title VI, as punitive damages are not ordinary contract remedies. *Id.* Accordingly, this Court concludes that punitive damages are unavailable under Title IX.

### *2. Substantive Title IX Claim*

As noted in Section II above, Plaintiff may prove retaliation either directly or indirectly. However, under the indirect method, Plaintiff would need to show that similarly situated individuals who did not engage in protected conduct were treated differently. *Andriakos v. Univ. of S. Ind.*, No. 92-3600, 19 F.3d 21, at *4 (7th Cir. 1994). The Seventh Circuit recently reaffirmed that the burden of showing similarly situated individuals should not be exceedingly heavy. *Coleman v. Donahoe*, --- F.3d ----, 2012 WL 32062, at *8 (7th Cir. 2012). However, the parties here have identified only one other individual who was fired after falsifying a timesheet, and *Plaintiff* argues that that person was not similarly situated. Accordingly, this Court will follow the parties' lead and analyze Plaintiff's evidence solely under the direct method.

To succeed, Plaintiff will have to show: (1) that he engaged in protected conduct; (2) that he was subjected to an adverse

employment action; and (3) that there is a causal connection between the protected activity and the adverse action. *See Bryant v. Gardner*, 587 F.Supp.2d 951, 964 (N.D. Ill. 2008). *Cf. O'Leary*, 657 F.3d at 630-31 (7th Cir. 2011) (Title VII). Defendants do not seem to dispute that the first and second prongs are met, in that Lalowski's reports of student harassment were protected, and he was fired. Instead, Defendants argue that Plaintiff can show neither a causal connection between the protected activity and his termination, nor that Defendants' espoused reason for firing him is pretextual. Def.'s Mem. in Supp. of Mot. for Summ. J. at 13-14.

Plaintiff may show causation by demonstrating that his protected conduct was a "substantial or motivating factor" in the decision to fire him. *See Coleman v. Donahoe*, --- F.3d ----, 2012 WL 32062, at *18 (7th Cir. 2012) (Title VII). He may do so through direct evidence (such as a confession by the employer) or by creating a "convincing mosaic of circumstantial evidence" that raises an inference of retaliation. *Id*. Three categories of evidence may be used to create a "convincing mosaic": (1) suspicious timing, ambiguous statements, and other "bits and pieces from which an inference of retaliatory intent might be drawn"; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employer gave a pretextual reason for firing the plaintiff. *Id*. at *19. Each category may suffice alone, or several may be used in combination. *Id*. Here, Plaintiff relies on the first and third categories of evidence.

- 10 -

### a. *Suspicious Timing*

Defendants argue that Plaintiff relies solely on suspicious timing to create the requisite causal link between his protected conduct and his termination. They are right that mere suspicious timing is not enough to defeat summary judgment; however, the Seventh Circuit recently reaffirmed that when suspicious timing is corroborated by other evidence of retaliatory motive, an interval of "a few weeks or even months may provide probative evidence of the required causal nexus." *Id*. at *19. Here, the short span of time between (at least) Plaintiff's last complaint against Lofton and his dismissal raises an inference of retaliation. As discussed below, when the record is construed in Plaintiff's favor, that inference is corroborated by some evidence that Defendants' reason for terminating Plaintiff was pretextual.

Defendants argue that the timing inference here is particularly weak, given that Plaintiff had raised prior complaints against Lofton without suffering adverse action. However, this ignores the December 2008 e-mail in which Lofton seeks to have Plaintiff fired. Pl.'s Mem. in Opp. to Summ. J., at Ex. 15. If Plaintiff's evidence is to be believed, that e-mail was in retaliation for Plaintiff's previous complaints against Lofton.

Finally, Defendants emphasize that in his deposition, Plaintiff agreed with defense counsel that suspicious timing was the basis of his belief that he was retaliated against. However, Plaintiff's awareness or interpretation of other evidence of

retaliation is not central to this Court's independent review of the record.

### b. Pretext

Defendants have offered a neutral, non-retaliatory reason for dismissing Plaintiff: that he falsified his timesheet on January 6, 2009. In evaluating that reason is pretextual, the question is whether the employer honestly believed the reason, not whether the criticisms of the Plaintiff were fair or accurate. *See O'Leary,* 657 F.3d at 635 (Title VII).

However, construing the record in his favor as this Court must on summary judgment, Plaintiff has offered sufficient evidence of pretext to defeat summary judgment. For example, he argues that Defendants' reaction to the timesheet incident was grossly disproportionate, given his testimony at deposition that the Campus President gave him January 2 off and promised to take care of the timesheet issue for him. *See Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011) (a "disingenuous overreaction to justify dismissal" can be impermissible retaliation.) Obviously, Defendants dispute his testimony. However, self-serving as it may be, Plaintiff's deposition testimony is competent evidence to defeat summary judgment. *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

Similarly, Plaintiff testified that McCormack initially refused to give him a reason for his dismissal, and told him only "insubordination" when pressed. The timesheet issue, he claims,

was not raised until he filed his complaint with the EEOC. If true, this would support an inference of pretext. *See Chaney v. Plainfield Healthcare Center,* 612 F.3d 908, 916 (7th Cir. 2010). Again, this evidence is contradicted by McCormack's version of events, but this only demonstrates that they are contested issues of fact necessitating a trial.

It may also be, as Defendants argue, that the contradictions and inconsistencies in the testimony of Defendants' employees are the product of faulty memories and the passage of time. As the movants on summary judgment, however, Defendants are not entitled to such an inference. Those contradictions raise an inference, albeit a weak one, of post-termination fabrication; added to Plaintiff's other evidence, they make granting summary judgment inappropriate.

Finally, Defendants stress that there is no evidence that Jarmes reacted poorly to Plaintiff's complaints, and offer an affidavit from Sean Quinn in which he avers that he harbors no ill will or retaliatory impulse toward Plaintiff. This evidence misses the point somewhat, however, because Plaintiff has proceeded essentially on a "cat's paw" theory by which Lofton, not Jarmes or Quinn, provided the requisite retaliatory animus and pretext. Under that theory, a plaintiff may prevail by showing that the retaliatory actions of someone other than the final decision-maker are the proximate cause for termination. *See Staub v. Proctor*

*Hosp.*, 131 S.Ct. 1186, 1194 (2011) (Uniformed Services Employment and Reemployment Rights Act).

Here, a jury could conclude that McCormack relied almost exclusively on Lofton's retaliatory distortion of the timesheet situation, and that Quinn in turn relied almost exclusively on McCormack in deciding to fire Plaintiff. *See id.* at 1193 (internal investigation based upon facts provided by a biased supervisor could support a cat's paw case.) *See also Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 381 (7th Cir. 2011). Accordingly, the undisputed fact that Lofton wanted Plaintiff fired is not irrelevant, and Defendants are not entitled to summary judgment.

### IV.  CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment as to Plaintiff's Title VII claim and his request for punitive damages under Title IX is granted. Defendants' Motion for Summary Judgment with regard to Plaintiff's Title IX claim for retaliation is denied.

**IT IS SO ORDERED.**

  
  
_____  
Harry D. Leinenweber, Judge  
United States District Court

**DATE:** 1/26/2012