```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
              EASTERN DIVISION
```

| | |
|---|---|
| **DANIEL LALOWSKI,** <br><br>              **Plaintiff,** <br><br>      v. <br><br> **CORINTHIAN SCHOOLS, INC. and CORINTHIAN COLLEGES, INC.,** <br><br>              **Defendants.** | **Case No. 10 C 1928** <br><br> **Hon. Harry D. Leinenweber** |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Plaintiff's Motion for Summary Judgment with respect to Post-Verdict relief. For the reasons stated herein, the Court grants in part and denies in part Plaintiff's Motion.

### I.   BACKGROUND

After a two-day trial, a jury returned a verdict in favor of Plaintiff Daniel Lalowski (hereinafter, the "Plaintiff" or "Lalowski") on his Title IX retaliation claim against Defendants Corinthian Schools, Inc. and Corinthian Colleges, Inc. (hereinafter, collectively, the "Defendants" or "Corinthian"). Specifically, the jury determined that Defendants retaliated against Lalowski by terminating his employment shortly after he notified Defendants' President that his supervisor was engaging in sexually inappropriate behavior with students. As a result of the

termination, the jury found Lalowski suffered mental and emotional distress and awarded the sum of $25,000 in damages.

At the conclusion of the trial, the Court directed the parties to file Motions for Post-Verdict Relief. On September 26, 2012, Plaintiff filed his Motion, styled as a Motion for Summary Judgment. In the Motion, Plaintiff requests that the Court award him economic damages for back pay and lost benefits. In addition, he asks to be reinstated in a position with Defendants or alternatively, to receive front pay.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it could affect the outcome of the case. *Id.* If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). To establish a genuine issue of fact, the non-moving party "must do more than show that there is some metaphysical doubt as the material facts." *Sarver v. Experian Info. Sys.*, 390 F.3d 969, 970 (7th Cir. 2004).

**III. DISCUSSION**

Lalowski prevailed on his Title IX retaliation claim against Defendants. The Seventh Circuit applies the same framework for retaliation claims under Title IX as retaliation claims under Title VII. *See, Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 388 (7th Cir. 2012). While Title VII forbids an employer from discriminating against an employee who opposed any practice protected by Title VII, Title IX prohibits discrimination "on the basis of sex" and covers "retaliat[ion] against a person *because* he complains of sex discrimination." *Id.* citing *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 174 (2005) (emphasis in original).

Prior to the Civil Rights Act of 1991, a prevailing party in a Title VII or IX action was limited to equitable relief – compensatory damages were unavailable. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 732 (7th Cir. 2004). However, after the Civil Rights Act of 1991 was passed, prevailing plaintiffs became entitled to compensatory damages. *See*, *Hildebrandt v. Illinois Dept. of Natural Res.,* 347 F.3d 1014, 1031 (7th Cir. 2003). Generally, compensatory damages are subject to limitations based on the size of the employer. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 119 (2002).

Back pay and front pay are available damages for plaintiffs who prevail in Title IX retaliation claims. These damages are

considered equitable and therefore are not subject to the statutory limitations. *See* 42 U.S.C. §§ 1981a(b)(2), 2000e-5(g); *see also, Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 848 (2001).

Reinstatement is another equitable remedy available to a prevailing party in a Title IX retaliation case. *Hicks v. Forest Preserve Dist. of Cook County Ill.*, 677 F.3d 781, 792 (7th Cir. 2012). The Seventh Circuit has held that reinstatement is "the preferred remedy for victims of discrimination and the court should award it when feasible." *Bruso v. United Airlines*, 239 F.3d 848, 862 (7th Cir. 2001). When such an award is not feasible, courts may award front pay in lieu of reinstatement. *See Shick v. IDHS*, 307 F.3d 605, 614 (7th Cir. 2002).

Lalowski seeks back pay and reinstatement from Defendants. He alternatively requests front pay if the Court determines reinstatement impractical.

### A. Back Pay

Lalowski seeks $214,638.00 in back pay. He claims he is entitled to this amount of money because he was reasonably diligent in his job search after being terminated, but was unable to find comparable employment and because he lost 401(k) benefits as a result of Defendants' unlawful termination. Defendants oppose such an award. They claim Lalowski is not entitled to any back pay because he failed to mitigate his damages and rejected an offer of comparable employment after being terminated.

"Title VII triggers a rebuttable presumption that a claimant is entitled to an award of back pay." *E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815, 817 (7th Cir. 1990). After a prevailing party establishes an amount of damages, the employer must demonstrate an affirmative defense such as, failure to mitigate in order to reduce the amount or prevent an award entirely. *Id.* at 818.

Back pay is calculated by "measuring the difference between actual earnings for the period and those which . . . [Plaintiff] would have earned absent the discrimination by the defendant." *U.S. E.E.O.C. v. Custom Companies, Inc.*, 02 C 3768, 2007 WL 734395 at *12 (N.D. Ill. Mar. 8, 2007). Generally, back pay "begins to accrue when the plaintiff first loses wages due to the discrimination [or retaliation] at issue, and [] ends on the date of judgment." *Molino v. Bast Servs.*, No. 08-C-4399, 2011 WL 841891 at *3 (N.D. Ill. Mar. 7, 2011). In order to recover back pay, a prevailing plaintiff must mitigate his damages by exercising reasonable diligence in finding new employment. *Gaffney v. Riverboat Servs. of Ind.*, 451 F.3d 424, 460 (7th Cir. 2006). Failure to mitigate is an affirmative defense that a defendant must prove to rebut a plaintiff's claim for back pay. *Id.*

In order to prove Lalowski failed to mitigate his damages, Defendants must prove that (1) Lalowski failed to exercise reasonable diligence to mitigate his damages; and (2) there was a reasonable likelihood that Lalowski would have found comparable

work by exercising such diligence. *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994).

### *1. Failure to Exercise Reasonable Diligence*

Lalowski admits he "did not actively seek work for about three to six months due to the depression and stress he suffered . . . " as a result of his termination. Pl.'s Mem. in Supp. of his Mot. for Summ. J. to Post-Verdict Relief at 3, ECF No. 89, Page ID #1057. Defendants contend this admission illustrates Lalowski's failure to mitigate and necessitates a reduction in back pay. Plaintiff argues his initial period of inactivity was excused because of the distress he suffered as a result of Defendants. Plaintiff relies on *Gurnee Inn Corporation* as support. The Court finds Plaintiff's reliance misplaced.

In *Gurnee Inn*, the Seventh Circuit found a defendant could not establish a failure to mitigate defense notwithstanding the fact the plaintiff admitted she waited a period of time prior to seeking new employment. *Id.* at 818, n.4. The plaintiff in *Gurnee Inn* was a 15-year-old high school student who was sexually harassed by her employer. *Id.* In light of the plaintiff's age and lack of work experience, the Seventh Circuit determined it was not "unreasonable under the circumstances" for her to "wait some period before again looking for work." *Id.*

The facts in *Gurnee Inn* are distinguishable from those here. First, it is undisputed Lalowski is an adult who graduated from

high school in 1996. Def.'s Resp. to Pl.'s Statement of Uncontested Material Facts at 2. Next, unlike the plaintiff in *Gurnee Inn* who personally suffered sexual harassment, Lalowski did not. Instead, he reported his supervisor for engaging in inappropriate sexual conduct with students. *Id.* at 7. While the Court does not intend to minimize the mental and psychological stress that corresponds with reporting a colleague of such conduct, the Court does not consider this circumstance analogous to a teenager who was sexually harassed at her place of employment. Accordingly, the Court finds Defendants have met their burden in establishing Lalowski failed to exercise reasonable diligence for the first six months after his termination.

After these initial six months, however, Lalowski has provided sufficient evidence to demonstrate he has engaged in reasonable efforts to secure employment. Specifically, Lalowski submitted work search records from the Illinois Department of Employment Security from August 2, 2010 to December 17, 2010. He claims he also had multiple interviews for various positions at the end of 2009 and the beginning of 2010. Additionally, he provided employment records which reflect employment as a car salesman beginning in February 2011. Lalowski states he remained employed as a car dealer until he resigned so he could begin working in his current job. *Id.* at 13. His current employer is a college

advisory service company that provides consultative advice on degree programs over the telephone. *Id.*

In light of the evidence Lalowski presented, the Court finds Defendants cannot establish Lalowski failed to exercise reasonable diligence in his search for employment after his initial six months of inactivity.

### *2. Reasonable Likelihood of Finding Comparable Employment*

In order to prevent an award of back pay, Defendants also must demonstrate there was a reasonable likelihood that Lalowski would have found comparable work if he exercised reasonable diligence in his job search. *Hutchison*, 42 F.3d at 1044.

Defendants claim they can satisfy this requirement because Lalowski rejected an offer of comparable employment approximately one year after his termination. Lalowski argues the job offer he received was for substantially less pay than his position with Defendants and thus cannot be construed as comparable employment.

Prior to his termination, Lalowski was employed as an admissions representative with Defendants. Since he began his employment with Defendants, Lalowski received a number of awards and increases in pay. It is undisputed that in January 2009 (when Defendants terminated Lalowski) he earned an annual salary of $64,260. Def.'s Resp. to Pl.'s Statement of Uncontested Material Facts at 6, ECF No. 95, Page ID# 1272.

Lalowski admits that in approximately January 2010, he had a job interview for a position as an admissions representative at another college similar to Defendants. Lalowski recollects receiving a verbal offer of employment from this college, but is unaware if the school was Illinois Institute of Technology ("ITT") or Westwood College. Lalowski claims he rejected the offer because the job only paid $45,000 per year.

The only evidence Lalowski has produced regarding the amount of this offer is his own affidavit. Because of this, Defendants argue its evidence of Westwood College's records "constitute the strongest evidence of the amount of the job offer." Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J. to Post-Verdict Relief at 6 n.4.

However, even if the Court assumes Defendants are correct and the offer was in fact from Westwood College and not ITT, the evidence Defendants present make it clear that a newly-hired admissions representative at Westwood College receives a base salary between "$28,000 to $49,500 . . . ." Defs.' App. of Ex. in Supp. of Defs.' Opp. to Pl.'s Mot. Tab 4 at 2. It goes without saying this salary is well below that which Lalowski earned with Defendants.

Despite this difference, Defendants contend the Westwood College offer was an offer of comparable employment. They argue Plaintiff had an obligation to reduce his salary demands after he failed to find comparable employment after attempting to do so for

a few months.  Defendants cite *Hutchinson* as support for this obligation.  The Court finds Defendants' support misguided.

In *Hutchinson*, the Seventh Circuit affirmed a district court's conclusion that it was appropriate for a jury to exclude the above market compensation a plaintiff received when analyzing Plaintiff's reasonable efforts to find comparable employment.  *Hutchinson*, 42 F.3d at 1045.  *Hutchinson* does not stand for the proposition that a plaintiff has an affirmative duty to lower his salary demands when he received an above average salary from a former employer who discriminated against him.  Instead, *Hutchinson* amounts to the Seventh Circuit's finding that district courts do not abuse their discretion if they give a jury instruction that allows for consideration of a plaintiff's above market compensation to determine whether the plaintiff has mitigated damages.  *Id.*  As such, the Court does not find *Hutchinson* persuasive with respect to Defendants' argument and thus does not find Defendants have demonstrated Lalowski would have obtained comparable employment.

Additional support for this finding lies in the definition of comparable employment.  *See Ward v. Tipton County Sheriff Dept.*, 937 F.Supp. 791, 797 (S.D. Ind. 1996).  In reference to mitigation of damages, comparable employment is defined as a position that affords the prevailing party "virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status" as their previous position.  *Id.*

In this case, Defendants failed to present evidence that there was a reasonable likelihood that Lalowski would have found comparable work if he exercised reasonable diligence. The fact that Lalowski initially accepted employment as a car salesman suggests that making such a showing in the current job market is perhaps easier said than done. Regardless, the Court finds Defendants cannot demonstrate the affirmative defense of failure to mitigate. Therefore, Lalowski is entitled to back pay.

### 3. *Calculating Back Pay*

Lalowski claims he is entitled to $214,638.00 in back pay. Lalowski's calculations are for the time period of Lalowski's termination through the date judgment was entered and include an annual salary increase of five percent.

Lalowski argues an annual five percent salary increase is appropriate because his salary had increased twenty-five percent for two years. The Court finds this increase speculative and finds the evidence Defendants presented regarding the fact that Lalowski was earning "nearly the maximum salary budgeted for his position in 2009[,]" persuasive. Defs.' Statements of Add. Facts in Opp. to Pl.'s Mot. at 8. Accordingly, the Court declines to apply this five percent increase.

The Court also declines to award Plaintiff back pay for the first six months after his termination. During this time, Lalowski admitted "he was not able to look for a job due to his depression

and 'shell shock.'" Pl.'s Statement of Uncontested Facts at 4, ECF No. 90, Page ID #1068. While he argues that this period of time should be excused because Defendants inflicted severe distress on him, the Court does not find the circumstances of this case justify Lalowski's conduct, (or lack thereof). *See, Payne v. Security Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991) (upholding reduction of plaintiff's back pay award for period during which his job search efforts consisted of spending merely "[a] few hours a week, maybe a month" looking for employment).

Defendants claim if Plaintiff is entitled to back pay, he should only receive $34,970. Defendants argue this amount excludes (1) the first six months Plaintiff admitted he did not seek employment; (2) the time Plaintiff was unemployed after he refused the alleged comparable offer from Westwood College; and (3) the time after Defendants closed the campus Lalowski worked.

The Court agrees with Defendants with respect to the first six months after Lalowski was terminated. However, the Court finds Defendants' other contentions belie the purposes of discrimination and retaliation claims under Titles VII and IX. In these cases, the Seventh Circuit has repeatedly held that if a plaintiff proves discrimination or retaliation, back pay may only be denied "for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination . . . and making persons whole." *E.E.O.C. v. O & G Spring and Wire Forms*

*Specialty Co.,* 38 F.3d 872, 880 (7th Cir. 1994). Because the Westwood College offer was not an offer of comparable employment, the Court refuses to cut off Lalowski's back pay after he rejected the offer.

The Court is equally unconvinced with Defendants' argument regarding the closure of the campus where Lalowski was employed. While it is undisputed Defendants closed the admissions department of the campus at which Lalowski worked in January 2012, it is also undisputed that Defendants own at least six other college campuses in the Chicagoland area. Defs.' Statement of Additional Facts in Opp. to Pl.'s Mot. for Summ. J. at 8. In light of this fact, Lalowski argues it is plausible he would have been transferred to another campus to work as an admissions representative. *See* Pl.'s Reply Memo. at 10, ECF No. 97, Page ID # 1308. As support, he presents evidence of another admissions representative who was transferred to a different campus to work as an admissions representative after Defendants closed the one Lalowski worked. Lalowski also provides evidence that Defendants transferred a president from one of its older campuses to become the first president of its new Melrose Park campus.

Given these facts, the Court does not find this to be a scenario where Defendants can definitively know Lalowski would have been laid off after the campus he worked at closed. *See Richardson v. Rest. Mktg. Assocs., Inc.*, 527 F.Supp. 690, 696 n.1 (N.D. Cal.

Nov. 17, 1981) (stating that if plaintiffs failed to present evidence that they "would have been able to transfer to other RMA-managed facilities after its San Francisco operation closed, and [failed to present evidence that they] would have been willing to relocate for that period after RMA ceased to operate in San Francisco" then the court would have refused to award back pay). Here, Lalowski presents sufficient evidence that transfer was possible and he would have been willing to relocate. Thus, the Court finds back pay for this period of time appropriate.

Accordingly, the Court awards Plaintiff $30,546 for the year 2009 (his base salary minus his earnings from Defendants for January 1, 2009 through January 9, 2009 (his termination date) and minus the first six months after his termination when he admitted he did not look for other employment); $64,260 for 2010 and 2011 (his full base salary at the time of termination); and $41,501.25 for 2012 (his base salary for January 1, 2012 through August 22, 2012, the date judgment was entered). The Court subtracts $34,250 from this total, as this is the amount Lalowski claims he earned from his other jobs for this period of time. Def.'s Resp. to Pl.'s Statement of Uncontested Material Facts at 13, ECF No. 95, Page ID# 1279. As such, the Court awards Lalowski $166,317.25 in back pay.

### *4. 401(k) Contributions*

In addition to his back pay request, Plaintiff also seeks to be reimbursed $6,222.22 in 401(k) contributions. Lalowski states

Defendants matched contributions up to 2.5%. He avers that if he remained employed with Defendants, he would have made the maximum contributions. However, the only evidence Lalowski submits to support this statement is a pay stub from 2008. *See* ECF No. 91-4, Page ID# 1107. The pay stub indicates Lalowski had grossed $58,760.76 as of December 28, 2008 and contributed $885.98 to his 401(k). This constitutes a 1.5% contribution. Accordingly, the Court awards Plaintiff $2,494.76. This amount reflects 1.5% of $166,317.25, Plaintiff's back pay award. *See Custom Companies, Inc.*, 2007 WL 734395 at *13-14 (awarding 401(k) contributions as back pay where the plaintiff presented sufficient evidence of prior contribution).

### *5. Pre-Judgment Interest*

Plaintiff also seeks prejudgment interest on his back pay award. He claims he is entitled to interest at a rate of 3.25%. The Court agrees.

Parties who prevail on their Title VII or Title IX retaliation claims are entitled to prejudgment interest on their back pay award. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 757 (7th Cir. 2002). When calculating prejudgment interest, the Seventh Circuit directs courts to use the prime rate. *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 820 (7th Cir. 2002). The current prime rate is 3.25%. Applying this rate to Lalowski's back pay

award of $166,317.25, yields a total of $5,405.30. The Court awards this amount in prejudgment interest.

### B. Reinstatement

Lalowski also seeks reinstatement. He requests to be reinstated to one of the six campuses Defendants own in the Chicagoland area. Lalowski submits computer printouts of job openings for admissions representatives at some of these campuses and states that Defendants have posted two of these openings in the past two years. Defendants respond reinstatement is not feasible since they closed the campus Lalowski worked.

The intent of Title VII (and in this case, Title IX) is to restore a plaintiff to the situation he would have been in had no retaliation occurred. *Gaddy v. Abex Corp.,* 884 F.2d 312, 319 (7th Cir. 1989). Because of this, reinstatement is the preferred remedy for prevailing parties in employment discrimination or retaliation cases. *See Bruso*, 239 F.3d at 861. Indeed, the Seventh Circuit has held "reinstatement is warranted absent exceptional circumstances demonstrating that the position is no longer available . . ." *Stephenson v. Aluminum Co. of America*, 915 F.Supp. 39, 56 (S.D. Ind. 1995) (citing *Gaddy,* 884 F.2d at 319). That being said, reinstatement is not always required. *Hutchison,* 42 F.3d at 1046. Generally, reinstatement is not granted "where the result would be undue friction and controversy." *Hutchison,* 42 F.3d at 1046; *McKnight v. General Motors Corp.,* 908 F.2d 104, 115

(7th Cir. 1990) ("*McKnight I*"). However, employer hostility developed during litigation cannot alone defeat reinstatement. *Hutchison,* 42 F.3d at 1046; *McKnight I,* 908 F.2d at 116.

When determining whether or not reinstatement is appropriate, courts in this Circuit examine various factors. Such factors include (1) the hostility of the employer; (2) the lack of available positions; and (3) the employer's dissatisfaction with the employee's job performance. *See McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir. 1992) ("*McKnight II*"). In *McKnight II*, the Seventh Circuit affirmed a district court's decision not to reinstate because the employee asked for "a completely different job and to be relocated in a new city," and there was no basis to conclude that the employee was qualified to perform the job he requested or that a position was even available. *Id.* at 1370-71.

The same is not true here. In this case, Lalowski seeks to be reinstated in the exact same position held prior to his termination. Moreover, Lalowski has presented evidence that there are at least two openings for admissions representatives at one of Defendants' campuses in the Chicago area. *See* ECF No. 91-15. In addition to this, Defendants admit all of the individuals involved in Lalowski's termination are no longer employed with Defendants. *See* Defs.' Resp. to Pl.'s Statement of Uncontested Material Facts

at 19.  Taking these facts into account, the Court finds reinstatement appropriate and grants Lalowski's request.

Defendants also claim reinstatement should be denied because at his deposition Plaintiff admitted he did not list all of his former employers on his resume.  Apparently one of the employers that were not listed was a retail store that terminated Plaintiff.  Defendants claim they would have terminated Lalowski had they discovered this while he was employed.  They state it is their policy to terminate an employee when they discover the employee was dishonest on his resume.  As support, Defendants provide the declaration of their Vice President of Human Resources.  *See* ECF No. 94-3.

A defendant in an employment discrimination or retaliation case can assert an after-acquired evidence defense.  *See generally McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361-62 (1995).  Under this defense, an employer may use evidence of the employee's misconduct it acquired after the case was filed to limit damages. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047 (7th Cir. 1999).  When an employer asserts this defense, it must establish, by a preponderance of the evidence, the after-acquired evidence would have led to the employee's termination.  *Id.* at 1047-48.

The Court finds Defendants have failed to meet this burden. In fact, their argument is nearly identical to one this Court rejected in *U.S. E.E.O.C. v. Custom Companies*, 2007 WL 734395 at

*15. In that case, the employer argued the employee's damages should have been limited because it discovered the employee lied on her resume about her relevant work experience. *Id.* As support, the employer presented a copy of their application that stated misrepresentations were "cause for termination." *Id.* This Court did not find such evidence sufficient to prove the employee would in fact have been fired. Instead, the Court noted "[i]n order to carry their burden, Defendants must do more than merely reiterate their policy." *Id.* The Court determined the employer needed to establish that their decision to terminate not only would have been justified, but also would have occurred. *Id.; see also Sheehan,* 173 F.3d at 1048 ("the inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often say they will discharge employees for certain misconduct while in practice they do not").

Like the employer in *Custom Companies*, Defendants here do nothing more than assert Lalowski would have been fired after they discovered he failed to include all his employers on his resume. Defendants fail to present any evidence that in the past they have fired other employees for such conduct. In fact, the only evidence Defendants provide is the aforementioned declaration. The Court finds this falls short of a preponderance of evidence. As such,

the Court rejects Defendants after-acquired evidence defense and finds reinstatement appropriate.

### C. Front Pay

Lalowski requested front pay in the event the Court denied reinstatement. In light of the Court's grant of reinstatement, the Court denies an award of front pay. *See Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 852 (2001) (front pay is appropriate in lieu of reinstatement).

### IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment. The Court awards Plaintiff: (1) $166,317.25 in back pay; (2) $1,638.00 in 401(k) contributions; (3) $5,405.31 in prejudgment interest; and (4) reinstatement.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: 4/26/2013